UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| PAMELA ANN FOX, | ) |
| Claimant, | ) 3:20-CV-00291-CRW |
| vs. | ) |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the United States Magistrate Judge with the consent of the parties and by order of reference [Doc. 14] for disposition and entry of a final judgment. Claimant's applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") under the Social Security Act, were denied on May 2, 2019, following a hearing before an Administrative Law Judge ("ALJ"). This action is one for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Each party filed a dispositive motion [Docs. 11 & 16] and supporting memorandum [Docs. 12 & 17].

For the reasons stated below, Claimant's Motion for Judgment on the Pleadings [Doc. 11] is **GRANTED in part**, the Commissioner's Motion for Summary Judgment [Doc. 16] is **DENIED**, and the Commissioner's decision is **REMANDED** under Sentence Four of 42 U.S.C. § 405(g).

## I. APPLICABLE LAW – STANDARD OF REVIEW

A review of the Commissioner's findings is narrow. The Court is limited to determining (1) whether substantial evidence supported the factual findings of the Administrative Law Judge ("ALJ") and (2) whether the Commissioner conformed to the relevant legal standards. 42 U.S.C. § 405(g); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Mebane v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 718, 721 (S.D. Ohio 2019). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 841 (6th Cir. 1986). The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). The Court may consider any evidence in the record, regardless of whether it was cited by the ALJ. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001); *see also Kushner v. Comm'r of Soc. Sec.*, 354 F. Supp. 3d 797, 802 (E.D. Mich. 2019). A decision supported by substantial evidence must stand, even if the evidence could also support a different decision. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing *Blakely*, 581 F.3d at 405); *see also Richardson v. Saul*, 511 F. Supp. 3d 791, 797 (E.D. Ky. 2021). At the same time, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007); *see also Ackles v. Comm'r of Soc. Sec.*, 470 F. Supp. 3d 744, 752 (N.D. Ohio 2020).

A claimant must suffer from a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a). A five-step sequential evaluation applies in disability determinations. 20 C.F.R. § 404.1520. The ALJ's review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A full review addresses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC—do significant numbers of other jobs exist in the national economy which the claimant can perform?

*See* 20 C.F.R. § 404.1520. A claimant has the burden to establish benefits entitlement by proving the existence of a disability. *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *see also Bowermaster v. Comm'r of Soc. Sec.*, 395 F. Supp. 3d 955, 959 (S.D. Ohio 2019). It is the Commissioner's burden to establish a claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *see also Jones v. Berryhill*, 392 F. Supp. 3d 831, 855 (M.D. Tenn. 2019).

## II. PROCEDURAL AND FACTUAL OVERVIEW

Pamela Ann Fox ("Claimant") applied for DIB and SSI on May 19, 2017. [Doc. 8, Transcript p. 15] (further citations to "Tr." and the page number is a reference to the administrative record contained in Doc. 8). Claimant alleged disability based upon degenerative disc disease, major joint dysfunction, gastrointestinal system disorders, osteoarthritis, and obesity with an onset date of December 28, 2015. (Tr. 15, 17-18). Claimant asserts that her primary "impairments involve her elbow, neck and back." (Tr. 20). Her claims were initially denied on December 1, 2017 and again on reconsideration on March 2, 2018. (Tr. 15). At Claimant's request, a hearing was held before Administrative Law Judge ("ALJ") Randolph W. Alden on March 28, 2019, during which Claimant and vocational expert Jane Hall testified. (Tr. 14-15).

At the time of the hearing, Claimant was 49 years of age and had obtained her GED. (Tr. 25, 255). The ALJ found that Claimant's only past relevant work experience was as a cleaner, which generally is classified as medium and unskilled level work but noted that at times Claimant's cleaning work had required her to perform at the heavy exertion level. (Tr. 25).

## III. ISSUES RAISED BY CLAIMANT

Claimant alleges that the ALJ erred in determining that she is not disabled and contends that substantial evidence does not support his determination regarding her residual functional capacity. Specifically, Claimant asserts that the ALJ improperly considered the opinion evidence contained in the record and failed to provide adequate reasons for rejecting certain evidence. Claimant further suggests that the ALJ failed to properly consider her subjective complaints and instead relied wholly on a sparse summary of the objective evidence in making his decision.

## IV. ANALYSIS

### a. ALJ's Treatment of Medical Opinion Evidence

Claimant submits the ALJ erred in determining that Claimant's RFC permitted her to engage in a reduced range of light work. In raising this error, Claimant suggests the ALJ improperly considered the opinion evidence of record in the following ways: 1) by failing to consider how her symptoms had worsened in considering the opinions rendered by Consultative Examiner Dr. Summers; 2) by relying on evidence that did not correlate to Dr. Salekin's opinion regarding Claimant's limitations; 3) by mischaracterizing the opinion of Dr. Burns; and 4) by failing to provide a sufficient explanation for why Dr. Kennedy's opinion was rejected. [Doc. 12, p. 8]. In response, the Commissioner asserts that the medical evidence of record supports a conclusion that Claimant has the continuing ability to perform light work and as such, the ALJ's decision should be affirmed. [Doc. 17, p. 1].

In reviewing Claimant's assignments of error, the Court notes the ALJ found that Claimant had the severe impairment of degenerative disc disease with major joint dysfunction. (Tr. 17). The ALJ found that Claimant's other alleged impairments of gastrointestinal system disorders, osteoarthritis and obesity were not severe "because they do not cause more than minimal limitations in her ability to perform basic work activities." (Tr. 18). In support the categorization of these disorders as non-severe, the ALJ stated that Claimant had full range of motion in all joints other than the elbows when she was seen by consultative examiner Jeffrey Summers, M.D., in October 2017. *Id.* (referencing Ex. 5F). He further opined that Claimant's primary treatment addressing her joints had been for the right elbow. *Id.* (referencing Ex. 3F-4F, 7F-8F & 10F). The ALJ also noted that in December 2015 when Claimant was seen by Middle Creek Family Practice, Claimant reported that she was doing well with her GERD and "was

5

Case 3:20-cv-00291-CRW   Document 18   Filed 09/30/21   Page 5 of 17   PageID #: 632

having no significant interval events." *Id.* (referencing Ex. 1F/9 and 1F/11). Additionally, the ALJ observed that while Claimant had mentioned osteoporosis in her original disability report and joint issues at her physical consultative exam, she did not report those conditions elsewhere in the documents she filed. *Id.* As to Claimant's obesity, the ALJ found that her BMI had ranged from 29.53 to 39.06, with a respiratory rate ranging from 12-16 breaths per minute. *Id.* He further observed that Claimant's BMI places her in the category of Level II obesity, which is not the more severe level. *Id.* The ALJ documented that during her consultative exam with Dr. Summers, Claimant was able to balance on one leg, climb onto the exam table without difficulty, walk in a normal manner with an upright posture and was also able to walk on her heels and toes, and did so without the aid of an orthotic device. *Id.* (referencing Ex. 5F). The ALJ further observed that Claimant did not report obesity as a medical condition that was limiting her ability to work. (Tr. 18) (referencing Hearing Testimony, Ex. 1E, 3E, 5E, 8E & 5F).

### 1. **Characterization of the Opinions of Drs. Burns and Summers**

Claimant asserts that the ALJ erred in how he characterized and considered the opinions of Drs. Burns and Summers. Because the ALJ referenced the opinions of Dr. Summers in addressing the persuasiveness of Dr. Burns' opinions, the Court finds it most efficient to address them together. The Court will first address Claimant's contention that the ALJ erred in finding unpersuasive the opinions of her treating orthopedic physician[1], E. Brantley Burns, Jr., M.D., who treated Claimant for an injury to her right arm. (Tr. 351). In forming his opinions regarding Claimant's functioning following that treatment, Dr. Burns considered not only his own

---

[1] Dr. Burns is listed as Claimant's treating physician simply to identify the role he played in this matter. The Court notes that the "treating physician rule, found in 20 C.F.R. § 404.1527, is inapplicable to claims filed after March 27, 2017 and as such, does not apply to the case at hand.

observations but also reviewed Claimant's functional capacity evaluations ("FCE") and medical records documenting previous treatment she received from his medical partner, P. Merrill White, III, M.D. *Id.* He then provided a detailed overview of the orthopedic injuries Claimant had sustained through the years and the physical limitations he and Dr. White determined Claimant experienced as a result. Dr. Burns stated that Claimant had undergone an anterior cervical discectomy and fusion on November 24, 2009 to address her cervical radiculopathy which was causing pain in the neck that radiated into the right arm. *Id.* While he noted that Claimant was initially able to go back to full-duty work after her surgery, later she lost the ability to perform her full work and underwent an FCE, after which she was released with permanent restrictions which limited her to medium exertion level work. *Id.* Dr. Burns further advised that Claimant suffered a later on-the-job injury to her right arm, which is the one for which he treated her, and which ultimately required Claimant to undergo a right lateral humeral epicondyle debridement and release to address the injury. (Tr. 351).

Dr. Burns made these observations in conjunction with evaluating what impairment Claimant had sustained due to the arm injury. *Id.* He noted that Claimant was ultimately able to demonstrate full range-of-motion with the elbow but that it was difficult because of the pain she experienced as she moved the elbow. *Id.* Dr. Burns further advised that the FCE which Claimant had recently undergone limited her to a sedentary level of exertion, specifically documenting that she was limited in her ability to lift, carry, push, pull and otherwise move objects. *Id.* The FCE specifically included observations by physical therapist, Kelly Ferris, DrPH, PT, who documented that the objective testing demonstrated Claimant provided maximum effort throughout the testing and that Claimant's arm became more and more painful and swollen through the evaluation process, ultimately requiring Claimant to hold her right arm with her left.

7

(Tr. 408, 416). Dr. Burns found it appropriate to adopt the restrictions noted in the FCE as Claimant's permanent restrictions. *Id.* He further placed Claimant at MMI (maximum medical improvement), indicating that he believed her condition was not expected to improve, although he did expect her to need future medical treatment. *Id.* As a result, Dr. Burns opined that Claimant had sustained an impairment of 7% to her upper extremity which equated to a 4% impairment to her body. *Id.*

In considering whether the ALJ properly considered the opinions offered by Dr. Burns, the Court first notes that Dr. Burns is an orthopedic specialist who treated Claimant for a significant time and performed surgery on her arm. Dr. Burns based his opinions regarding Claimant's limitations on both his observations and treatment of Claimant as well as on the treatment records generated by Dr. White and the FCE report prepared by Dr. Ferris. The ALJ provides little analysis of Dr. Burns' opinions, and summarily rejects them as unpersuasive because they were "made shortly after major treatment in the form of surgery and [are] inconsistent with subsequently received medical evidence, including the October 2017 physical consultative examination report (Ex. 5F) discussed further above." (Tr. 23-24).

The Court must agree with Claimant that the ALJ's reliance on the length of time between Dr. Burns performing surgery on Claimant and the rendering of his opinions to discount the weight afforded to Dr. Burns' opinion is inappropriate based upon the record. Dr. Burns performed surgery on May 4, 2016 but did not render his opinion until Claimant's visit with him on September 27, 2016, almost five months later. (Tr. 433). At that time, he placed Claimant at MMI which, as noted above, indicated he did not expect her condition to improve further over time. *Id.* The FCE he considered in forming his opinion was performed on August 23, 2016, nearly four months after the date of Claimant's surgery. (Tr. 407). The ALJ points to no factual

8

Case 3:20-cv-00291-CRW   Document 18   Filed 09/30/21   Page 8 of 17   PageID #: 635

or legal basis supporting his conclusion that Dr. Burns' opinion was unreliable because he did not wait longer to provide it.

The ALJ further rejected the opinions of Dr. Burns because he claimed they conflicted with those rendered by Jeffrey S. Summers, M.D. following his October 31, 2017 evaluation of Claimant; however, the ALJ did not explain how the two opinions conflict. Dr. Summers' examination of Claimant revealed that she had limited range of motion in her elbows. (Tr. 402). While Dr. Summers did find that Claimant could lift more weight than did Dr. Burns, Dr. Summers found that Claimant had other limitations similar to those ascribed by Dr. Burns. *Id.* Specifically, Dr. Summers found that Claimant would have difficulty elevating her arms above shoulder level, and reaching, pushing, and pulling on more than an occasional basis. *Id.* He further opined that Claimant would have difficulty "bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than 20lbs more than [on] an occasional basis." *Id.* Interestingly, while the ALJ rejected Dr. Burns' opinions in part because of those rendered by Dr. Summers, the ALJ also rejected certain opinions rendered by Dr. Summers, stating that the limitations he assigned to Claimant were overly restrictive and not supported by the record. (Tr. 23).

In support of rejecting certain of Dr. Summers' opinions, the ALJ noted that during Claimant's June 2017 visit with Dr. White at Tennessee Orthopaedic Clinics, she was able to "forward flex the head to chin on the chest, right and left lateral bend, and extend the cervical spine without complaints of pain." *Id.* (referencing Ex. 3F, p. 2, 7). The ALJ omitted from his findings that at the same appointment, Claimant noted "neck pain throughout the range of motion." (Tr. 519). Additionally, in comparing medical imaging from Claimant's 2017 visit with her 2010 imaging, Dr. White found that Claimant's degenerative disease had worsened at

C5-6 and C4-5 and noted disc space narrowing and osteophyte formation.

Given this additional information contained in the record but not addressed by the ALJ, it does not appear that the ALJ's rejection of certain of Dr. Summers' opinions was based upon substantial evidence. Moreover, it does not appear that substantial evidence supported the ALJ's decision to reject the opinions of Dr. Burns in favor of the opinions of Dr. Summers whose opinions the ALJ then found to be only partially supported by the record. This is especially true given that the ALJ did not identify the ways in which he found the opinions of Drs. Burns and Summers to be in conflict. It appears that the ALJ impermissibly cherry-picked the opinions in the record which supported his conclusions while rejecting others without sufficient explanation. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014).

### 2. Rejection of Limitations imposed by Dr. Salekin

Claimant further suggests that the ALJ erred in rejecting certain limitations assigned to Claimant by C.M. Salekin, M.D, who determined that Claimant should never crouch or crawl and could only lift and/or carry a maximum of 10 pounds. (Tr. 23). Despite this finding, because Claimant was able to climb onto Dr. Salekin's exam table without difficulty, the ALJ concluded that she could occasionally crouch, crawl, lift and/or carry 20 pounds. *Id.* The Court cannot find that the ALJ built the bridge between Claimant's ability to climb onto an exam table and her ability to lift, carry crouch and crawl as is required under applicable law; thus, his use of this conclusion as the basis for rejecting certain restrictions assigned by Dr. Salekin was error. *Williams v. Saul,* 2019 WL 6481285, at *6 (E.D. Tenn. Dec. 2, 2019) (internal citations omitted).

### 3. Rejection of Dr. Kennedy's Opinion

The ALJ fully rejected the medical opinions provided by William Kennedy, M.D. (Tr.24). In doing so, the ALJ stated that Dr. Kennedy's opinions were not persuasive because they were

inconsistent with the other substantial evidence and were overly restrictive. *Id.* The ALJ further stated, "[m]ore specifically, [Dr. Kennedy's opinion] is not consistent with the longitudinal treatment records, and it appears to be based in large part on the claimant's subjection allegations." *Id.* In so finding, the ALJ gave no specifics regarding the ways in which Dr. Kennedy's opinions conflicted with the longitudinal record. While Dr. Kennedy's records do indicate that he obtained information from Claimant regarding her medical complaints, those records further indicate that he performed an in-depth physical examination of Claimant and noted in detail the results of the examination. (Tr. 436-37). Additionally, Dr. Kennedy reviewed and summarized Claimant's medical records and FCEs from Tennessee Orthopaedic Clinics, Champion Physical Therapy and Therapy Plus. (Tr. 434-35). Dr. Kennedy then provided an analysis of his findings regarding Claimant's spine and right arm conditions, assessed her permanent impairment as to the right arm, and provided his opinion regarding Claimant's permanent restrictions and the reasons for the assigned restrictions. (Tr. 437-40). Dr. Kennedy's approach to evaluating Claimant appears to have been very similar to that of the agency reviewers upon which the ALJ relied, and his opinions appear to be at least as thoroughly documented and supported. Without the ALJ having noted the specific ways in which he found Dr. Kennedy's opinions to conflict with the substantial evidence of record, the Court cannot determine whether the ALJ was entitled to reject those opinions. *See Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170 at *6 (E.D. Mich. Aug. 13, 2021) (citing *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377 (4th Cir. 2021)).

### 4. Impact of ALJ's Errors Upon Assignment of Claimant's Residual Functional Capacity

Given the ALJ's errors noted above, the Court must now determine whether he properly assigned a residual functional capacity in accordance with applicable law and based on

substantial evidence in the record. "Residual Functional Capacity" means "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs. . .." 20 C.F.R. § Pt. 404, Subpt. P, App. 2(c). In assessing a claimant's RFC, applicable regulations provide the following guidance for the agency:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b). In rendering a decision about a claimant's RFC, an ALJ is prohibited from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the Claimant's] medical sources. 20 C.F.R. § 404.1520c.

Instead of simply deferring to medical sources, an ALJ is required to consider multiple factors in evaluating the evidence including (1) supportability; (2) consistency; (3) a source's relationship with the Claimant; (4) specialization; and (5) other supporting or contradicting factors. 20 C.F.R. § 416.920c. As other courts have noted, "[s]upportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (citing *Pogany v. Berryhill*, No. 4:18-CV-04103-VLD, 2019 WL 2870135, at *27 n. 7 (D.S.D. July 3, 2019)) (internal quotations omitted).

In assessing whether a medical opinion is supportable, the focus is on the relevance of the objective medical evidence and supporting explanations upon which the opinion is based. In other words, "[t]he more relevant the objective medical evidence and supporting explanations…, the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R.

§ 404.1520c(c)(1). In considering consistency, the focus is on how the opinions provided square with the overall record. Specifically, "[t]he more consistent a medical opinion(s)… is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. § 404.1520c(c)(2). Additionally, the ALJ is to consider the purpose of a medical source's treatment opinions. 20 C.F.R. § 404.1520c(c)(3)(iii) (In evaluating a doctor-patient relationship "[t]he purpose for treatment [a claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s)."). When an ALJ engages in his or her review of the records, the ALJ need not "explain every piece of evidence in the record." *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445 (6th Cir. 2018).

The Court observes that the procedure outlined above is a significant departure from prior law which required the specific weighting of medical opinions and a presumption that greater weight should be afforded to the opinion of a treating source, and the change provides greater latitude for an ALJ in determining whether to grant benefits. *See Hardy*, 2021 WL 3702170, at *6 (recognizing the new rule and noting the "importance of cogent explanations" or reasons being provided by ALJs regarding persuasiveness given the "greater latitude" afforded to them under these new regulations).

This change did not impact the Court's standard for determining whether to affirm an ALJ's decision. The Court will continue to affirm the ALJ's ruling if it is based on substantial evidence, even if the Court might have reached a different conclusion after reviewing the evidence. *Richardson*, 511 F. Supp. 3d at 797. Despite this deferential standard, the Court still must carefully consider whether the ALJ fully reviewed the record. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (administrative courts may not focus on some evidence, while ignoring other evidence); *see e.g. Bunch v. Comm'r of Soc. Sec.*, No. CV 20-148-HRW, 2021 WL 3269258, at *2 (E.D. Ky.

13
Case 3:20-cv-00291-CRW   Document 18   Filed 09/30/21   Page 13 of 17   PageID #: 640

July 30, 2021). The requirement that an ALJ fully review the record is designed to protect a claimant from "'bewilder[ment] when told by an administrative bureaucracy that she is not. . .' disabled when '[her] physician has deemed [her] disabled. . ..'" *Hardy*, 2021 WL 3702170, at \*6 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Rather than addressing Claimant's specific assignments of error, the Commissioner's brief simply tries to demonstrate that the substantial evidence of record supports the ALJ's determination as to Claimant's RFC. While the ALJ's determination regarding Claimant's RFC may be supported by the evidence of record, in failing to properly consider the medical opinions of Drs. Burns, Summers, Salekin, and Kennedy in relation to the full evidence of record, the ALJ has deprived the Court of the information necessary to make that assessment, which requires the Court to remand the matter for further development of the record. While it would have been a much closer call as to whether remand was required had the ALJ erred in considering the opinion of only one of these four physicians, the Court simply cannot assume that the ALJ correctly assessed Claimant's RFC given that errors were made as to all four.

### b. ALJ's Evaluation of Claimant's Subjective Complaints

Having determined that the ALJ's failure to properly assess Claimant's RFC requires remand, the Court finds it unnecessary to fully address Claimant's contention that the ALJ further erred by failing to adequately consider her subjective complaints. However, there are certain findings the ALJ made in relation to Claimant's subjective complaints that the Court will address at this juncture. When addressing Claimant's activities of daily living, the ALJ made the broad statement that these activities "do not support her allegations to the extent alleged." (Tr. 22). While noting that Claimant "is limited in her ability to perform standard activities of daily living, like personal care, household chores, and driving, and she is no longer able to perform certain activities as she used to, like crocheting[,]" he goes on to note that she is able to perform these tasks to a

14
Case 3:20-cv-00291-CRW   Document 18   Filed 09/30/21   Page 14 of 17   PageID #: 641

certain degree. *Id.* The ALJ then notes that Claimant had to postpone her hearing due to being on a family cruise vacation which he stated is inconsistent with disability. *Id.* The ALJ finally notes in addressing Claimant's activities of daily living that "[r]ather than being completely restricted, they appear to be partially restricted overall and thereby support the above residual functional capacity."

While the Court agrees that engaging in a cruise vacation might be inconsistent with Claimant's purported physical limitations, the record before the Court demonstrates no support for that conclusion. To support such a conclusion, the ALJ would need to know the types of activities the Claimant engaged in during this vacation. Additionally, while the ALJ may not have intended to indicate Claimant could not be found disabled and still retain the ability to engage in limited household chores, shopping that amounted to "grabbing a few items" and driving within a few miles of her home, his statements noted above could be interpreted in that manner. If that is what the ALJ meant, his statement would not be in keeping with applicable law. *See Laxton v. Astrue*, No. 3:09-CV-49, 2010 WL 925791, at *10 (E.D. Tenn. Mar. 9, 2010) (citing *Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir.2006)).

While the Court found it necessary to address these aspects of the ALJ's assessment of Claimant's subjective complaints, in absence of the errors committed by the ALJ in addressing the medical evidence of record, it likely would not have disturbed the ALJ's evaluation of Claimant's subjective complaints. Still, the Court notes that "subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citing *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 150–51 (6th Cir.1990); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir.1986)). As such, on remand, if the ALJ

15
Case 3:20-cv-00291-CRW    Document 18    Filed 09/30/21    Page 15 of 17    PageID #: 642

determines that a fully favorable disability determination is not warranted based solely on objective medical evidence, he should then fully evaluate Claimant's subjective complaints in making a final benefits determination, taking into account whether the complaints are consistent with objective medical evidence and other evidence in the record in accordance with 20 C.F.R. § 404. 1529 and Social Security Ruling 16-3p. *See Hosier v. Berryhill*, No. 2:16-CV-00234, 2017 WL 3975086, at *4 (E.D. Tenn. Sept. 7, 2017) (noting that Ruling 16-3p prevents an ALJ from disregarding a claimant's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence alone does not reflect the same degree of impairment-related symptoms as alleged by the individual).

V.     **CONCLUSION**

Claimant submits that reversal rather than remand is appropriate in this case. [Doc. 12, p. 19]. "If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision immediately and award benefits only if all essential factual issues have been resolved and the record adequately establishes a [claimant's] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994). A judicial award of benefits is an extraordinary remedy and is "proper only where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Id.* Here, although the Court has determined that the ALJ erred in his consideration of the medical opinion evidence, the Court cannot say that all essential factual issues have been resolved nor determine that Claimant is clearly entitled to benefits on the record as it now stands. As such, this case is not appropriate for reversal.

However, after a careful review of the administrative record and the pleadings, the Court has concluded that the ALJ erred in assessing the medical opinion evidence of record and as a

result did not provide the information necessary for the Court to determine whether substantial evidence supports his determination as to Claimant's RFC; therefore, remand of this matter is required. Accordingly, Claimant's Motion for Judgment on the Pleadings [Doc. 11] is **GRANTED in part** and Respondent Commissioner's Motion for Summary Judgment [Doc. 16] is **DENIED**. Pursuant to 42 U.S.C. § 405(g), the case is **REMANDED** for further consideration as outlined herein.

SO ORDERED:

/s Cynthia Richardson Wyrick
United States Magistrate Judge